# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| FELIPE ELIZONDO,<br>Individually and on behalf<br>of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>PRECISION GROUP ENERGY SERVICES,<br>INC. and HAROEEL A. GODINEZ<br><br>*Defendants.* | Civil Action No. **5:18-cv-00597**<br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION<br>PURSUANT TO 29 U.S.C. § 216(b)** |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

Felipe Elizondo brings this action individually and on behalf of all others similarly situated (hereinafter "Plaintiff and the Putative Class Members") who worked for Precision Group Energy Services, Inc. and Haroeel A. Godinez (collectively, "Defendants" or "Precision"), at any time from three years preceding the filing of the Original Complaint through the final disposition of this matter, seeking all available relief, including compensation, liquidated damages, attorneys' fees, and costs, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*

## I.
## OVERVIEW

1. This is a collective action to recover overtime wages brought pursuant to the FLSA, 29 U.S.C. § 201 *et. seq.*

2. Plaintiff and the Putative Class Members are those current and former oilfield workers who worked for Precision at any time from June 15, 2015 through the final disposition of this matter, and did not receive overtime for all hours worked over forty (40) in each workweek.

3. Defendants improperly classified Plaintiff and the Putative Class Members as independent contractors.

4. Plaintiff and the Putative Class Members routinely work (and worked) in excess of forty (40) hours per workweek.

5. Plaintiff and the Putative Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

6. The decision by Defendants not to pay overtime compensation to Plaintiff and the Putative Class Members was neither reasonable nor in good faith.

7. Defendants knowingly and deliberately failed to compensate Plaintiff and the Putative Class Members overtime for any hours worked in excess of forty (40) hours per workweek.

8. Plaintiff and the Putative Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA. Specifically, Plaintiff and the Putative Class Members performed routine and manual labor type job duties in the oilfield.

9. Plaintiff and the Putative Class Members therefore seek to recover all unpaid overtime and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

10. Plaintiff also prays that all similarly situated workers (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

## II.
## THE PARTIES

11. Plaintiff Felipe Elizondo ("Elizondo") worked for Precision during the relevant time period. Plaintiff Elizondo did not properly receive overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

---

[1] The written consent of Felipe Elizondo is attached hereto as Exhibit "A."

12. The Putative Class Members are those current and former oilfield workers who were employed by Defendants at any time since June 15, 2015 and have been subjected to the same illegal pay system under which Plaintiff Elizondo worked and was paid.

13. Precision Group Energy Services, Inc. ("Precision") is a Texas for-profit corporation, and may be served through its registered agent for service of process: **Haroeel A. Godinez, 2502 E. Travis, Laredo, Texas 78043.**

14. Haroeel A. Godinez ("Godinez") is an employer as defined by 29 U.S.C. § 203(d) and, along with Precision, employed or jointly employed Plaintiff and the Putative Class Members. Haroeel A. Godinez may be served at **301 St. Veran Court, Laredo, Texas, 78041**, **or wherever he may be found.**

15. Defendants are joint employers pursuant to 29 C.F.R. § 791.2. They have common ownership, oversight and control over Precision and Plaintiffs and the Putative Class Members. As a result, all Defendants are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA, including the overtime provisions, with respect to the entire employment for the workweeks at issue in this case.

### III.
### JURISDICTION & VENUE

16. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. § 201 *et. seq.*

17. This Court has personal jurisdiction over Defendants because the cause of action arose within this district as a result of Defendants' conduct within this District.

18. Venue is proper in the Western District of Texas because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

19. Specifically, Defendants have maintained a working presence throughout the State of Texas, and Plaintiff Elizondo performed work on behalf of Defendants in and around San Antonio, Texas, which is located in this District and Division.

20. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391(b).

## IV.
## FACTS

21. Precision provides oilfield services to the oil and gas industry throughout the State of Texas.

22. Precision is owned and operated by Haroeel A. Godinez.

23. Defendant Godinez is the Director of Defendant Precision and an employer as defined by 29 U.S.C. § 203(d).

24. Defendants are joint employers pursuant to 29 C.F.R. § 791.2.

25. Defendants directly or indirectly hired Plaintiff and the Putative Class Members, controlled their work schedules and conditions of employment, and determined the rate and method of the payment of wages.

26. Defendants maintained control, oversight, and direction over Plaintiff and the Putative Class Members, including the promulgation and enforcement of policies affecting the payment of wages for overtime compensation.

27. Defendants mutually benefitted from the work performed by Plaintiff and the Putative Class Members.

28. Defendants did not act entirely independently of each other and have not been completely disassociated with respect to the work of Plaintiff and the Putative Class Members.

29. Defendants shared the services of Plaintiff and the Putative Class Members.

30. Defendants acted directly or indirectly in the interest of each other in relation to Plaintiff and the Putative Class Members.

31. Specifically, Defendants dictated the practice goals and what pressing or tactical items needed to be done in order to meet the goals of the respective Defendants and/or their clients.

32. Moreover, all Defendants had the power to hire and fire Plaintiff and the Putative Class. Members; supervise and control Plaintiff and the Putative Class Members' work schedules and conditions of their employment; determined their rate and method of payment; and, maintained their employment records.

33. As a result, all Defendants are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA, including the overtime provisions, with respect to the entire employment for the workweeks at issue in this case.

34. To provide their services, Defendants employed numerous oilfield workers throughout the State of Texas.

35. Plaintiff Elizondo worked for Defendants as a Fuel Operator from approximately May 2017 through December 2017.

36. Defendants paid Plaintiff and the Putative Class Members a fixed amount for all hours worked. Specifically, Plaintiff Elizondo was paid $1,350.00 each week but did not receive overtime compensation at the required rate of time-and-one-half for all hours worked over forty (40) each workweek.

37. Plaintiff and the Putative Class Members regularly worked in excess of forty (40) hours per week. Specifically, Plaintiff and the Putative Class Members typically worked 80 to 85 hours each week.

38. Although it is well-known that blue-collar oilfield workers like Plaintiff and the Putative Class Members are **_not exempt_** from overtime, Defendants did not pay Plaintiff and the Putative Class Members the additional overtime premium required by the FLSA for hours worked in excess of forty (40) in a workweek.

39. Plaintiff and the Putative Class Members' primary job duties included performing daily checklists, assisting with the preparation of equipment, and performing other oilfield related functions on various job sites.

40. Upon information and belief, Plaintiff and the Putative Class Members would conduct their day-to-day activities within mandatory and designed parameters and in accordance with pre-determined operational plans created by Defendants and/or its clients.

41. Upon further information and belief, Plaintiff and the Putative Class Members' daily and weekly activities were routine and largely governed by standardized plans, procedures, and checklists created by Defendants and/or its clients.

42. Virtually every job function was pre-determined by Defendants and/or its clients, including the tools to use at a job site, the schedule of work, and related work duties. Plaintiff and the Putative Class Members were prohibited from varying their job duties outside of the predetermined parameters.

43. Moreover, Plaintiff and the Putative Class Members' job functions were primarily routine and manual labor in nature, requiring little to no official training, much less a college education or other advanced degree

44. Indeed, Plaintiff and the Putative Class Members are blue-collar workers. They rely on their hands, physical skills, and energy to perform manual and routine labor in the oilfield.

45. Plaintiff and the Putative Class Members' duties did not (and currently do not) include managerial responsibilities or the exercise of independent discretion or judgment.

46. Plaintiff and the Putative Class Members did not (and currently do not) have the authority to hire or fire other employees, and they were not (and currently are not) responsible for making hiring or firing recommendations.

47. Plaintiff and the Putative Class Members' duties did not (and currently do not) concern work directly related to the management or general business operations of Defendants or its customers.

48. Defendants determined the hours Plaintiff and the Putative Class Members worked.

49. Defendants set Plaintiff and the Putative Class Members' pay and controlled the number of hours they worked.

50. Defendants set all employment-related policies applicable to Plaintiff and the Putative Class Members.

51. Defendants maintained control over pricing and marketing.

52. Defendants also chose equipment and supplies that Plaintiff and the Putative Class Members used to perform their work.

53. Defendants had the power to hire and fire Plaintiff and the Putative Class Members.

54. Defendants made all personnel and payroll decisions with respect to Plaintiff and the Putative Class Members, including but not limited to, the decision to pay Plaintiff and the Putative Class Members a salary with no overtime pay.

55. Plaintiff and the Putative Class Members did not employ their own workers.

56. Plaintiff and the Putative Class Members worked exclusively for Defendants on a permanent full-time basis.

57. Defendants, instead of Plaintiff and the Putative Class Members, paid operating expenses like rent, payroll, marketing, insurance, and bills.

58. Plaintiff and the Putative Class Members relied on Defendants for their work. Plaintiff and the Putative Class Members did not market any business or services of their own. Instead, Plaintiff and the Putative Class Members worked the hours assigned by Defendants, performed duties assigned

by Defendants, worked on projects assigned by Defendants, and worked for the benefit of Defendants and its customers.

59. Defendants paid Plaintiff and the Putative Class Members on a bi-weekly basis.

60. Plaintiff and the Putative Class Members did not earn a profit based on any business investment of their own. Rather, Plaintiff and the Putative Class Members' only earning opportunity was based on the number of hours they were allowed to work, which was controlled by Defendants and/or its customers.

61. Defendants improperly classified Plaintiff and the Putative Class Members as independent contractors. The classification was improper because Plaintiff and the Putative Class Members were not in business for themselves. Instead, they were economically dependent upon Defendants for their work.

62. Plaintiff and the Putative Class Members' duties did not (and currently do not) include managerial responsibilities or the exercise of independent discretion or judgment.

63. The FLSA mandates that overtime be paid at one and one-half times an employee's regular rate of pay.

64. Defendants denied Plaintiff and the Putative Class Members overtime pay as a result of a widely applicable, illegal pay practice. Plaintiff and the Putative Class Members regularly worked in excess of forty (40) hours per week but never received overtime compensation.

65. Defendants applied this pay practice despite clear and controlling law that states that the manual labor/technical, routine duties which were performed by Plaintiff and the Putative Class Members consisted of **_non-exempt_** work.

66. Defendants did not pay any overtime at all for work in excess of forty (40) hours per week.

67. Accordingly, Defendants' pay policies and practices violated (and continue to violate) the FLSA.

# V.
# CAUSES OF ACTION

## COUNT ONE
### (Collective Action Alleging FLSA Violations)

**A.     FLSA COVERAGE**

68. All previous paragraphs are incorporated as though fully set forth herein.

69. The FLSA Collective is defined as:

**ALL OILFIELD WORKERS WHO WORKED FOR PRECISION GROUP ENERGY SERVICES, INC. AND/OR HAROEEL A. GODINEZ, AT ANY TIME FROM JUNE 15, 2015 THROUGH THE FINAL DISPOSITION OF THIS MATTER, AND WERE NOT PAID OVERTIME ("FLSA Collective" or "FLSA Collective Members").**

70. At all times hereinafter mentioned, Defendants have been joint employers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

71. At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

72. At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that those enterprises have had, and have, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

73. During the respective periods of Plaintiff and the FLSA Collective Members' employment by Defendants, these individuals provided services for Defendants that involved interstate commerce for purposes of the FLSA.

74. In performing the operations hereinabove described, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

75. Specifically, Plaintiff and the FLSA Collective Members are (or were) **_non-exempt_** employees who worked for Defendants and were engaged in oilfield services that were directly essential to the sale of goods by Defendants. 29 U.S.C. § 203(j).

76. At all times hereinafter mentioned, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

77. In violating the FLSA, Defendants acted willfully, without a good faith basis and with reckless disregard of applicable federal law.

78. The proposed collective of similarly situated employees, i.e. putative collective members sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 69.

79. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants.

**B. FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FAIR LABOR STANDARDS ACT**

80. All previous paragraphs are incorporated as though fully set forth herein.

81. Defendants violated provisions of Sections 6, 7 and 15 of the FLSA, 29 U.S.C. §§ 206, 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours

without compensating such employees for their employment in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

82. Plaintiff and the FLSA Collective Members have suffered damages and continue to suffer damages as a result of Defendants' acts or omissions as described herein; though Defendants are in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

83. Moreover, Defendants knowingly, willfully and in reckless disregard carried out their illegal pattern of failing to pay Plaintiff and other similarly situated employees overtime compensation. 29 U.S.C. § 255(a).

84. Defendants knew or should have known their pay practices were in violation of the FLSA.

85. Defendants are sophisticated parties and joint employers, and therefore knew (or should have known) their policies were in violation of the FLSA.

86. Plaintiff and the Putative Class Members, on the other hand, are (and were) unsophisticated laborers who trusted Defendants to pay according to the law.

87. The decision and practice by Defendants to not pay overtime was neither reasonable nor in good faith.

88. Accordingly, Plaintiff and the Putative Class Members are entitled to overtime wages for all hours worked pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C. COLLECTIVE ACTION ALLEGATIONS

89. All previous paragraphs are incorporated as though fully set forth herein.

90. Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of all those who are (or were) similarly situated to Plaintiff.

91. Other similarly situated employees have been victimized by Defendants' patterns, practices, and policies, which are in willful violation of the FLSA.

92. The FLSA Collective Members are defined as Paragraph 69.

93. Defendants' systematic failure to pay wages for all hours worked and overtime compensation at the rates required by the FLSA results from generally applicable policies and practices, and does not depend on the personal circumstances of the Putative Class Members.

94. Thus, Plaintiff's experiences are typical of the experiences of the Putative Class Members.

95. The specific job titles or precise job requirements of the various Putative Class Members does not prevent collective treatment.

96. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked in excess of forty (40) hours per workweek.

97. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts. Indeed, the Putative Class Members are non-exempt, blue-collar oilfield laborers entitled to overtime after forty (40) hours in a workweek.

98. Defendants employed a substantial number of oilfield workers in the State of Texas during the past three years.

99. Absent a collective action, many members of the proposed FLSA class likely will not obtain redress of their injuries and Defendants will retain the proceeds of their rampant violations of federal wage and hour laws.

100. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

101. Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 69 and notice should be promptly sent.

## VII.
## RELIEF SOUGHT

102. Plaintiff respectfully prays for judgment against Defendants as follows:

    a. For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA, certifying the FLSA Collective as defined in Paragraph 69 and requiring Defendants to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

    b. For an Order approving the form and content of a notice to be sent to all FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

    c. For an Order awarding Plaintiff (and those FLSA Collective Members who have joined in the suit) back wages that have been improperly withheld;

    d. For an Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiff (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

    e. For an Order awarding Plaintiff (and those FLSA Collective Members who have joined in the suit) the costs of this action;

    f. For an Order awarding Plaintiff (and those FLSA Collective Members who have joined in the suit) attorneys' fees;

    g. For an Order awarding Plaintiff (and those FLSA Collective Members who have joined in the suit) pre-judgment and post-judgment interest at the highest rates allowed by law;

    h. For an Order awarding Plaintiff a service award as permitted by law;

i. For an Order compelling the accounting of the books and records of Defendants, at Defendants' expense;

j. For an Order providing for injunctive relief prohibiting Defendants from engaging in future violations of the FLSA, and requiring Defendants to comply with such laws going forward; and

k. For an Order granting such other and further relief as may be necessary and appropriate.

Date: June 15, 2018  Respectfully submitted,

**ANDERSON ALEXANDER, PLLC**

By: */s/ Clif Alexander*
**Clif Alexander**
Texas Bar No. 24064805
clif@a2xlaw.com
**Lauren E. Braddy**
Texas Bar No. 24071993
lauren@a2xlaw.com
**Alan Clifton Gordon**
Texas Bar No. 00793838
cgordon@a2xlaw.com
**Carter T. Hastings**
Texas Bar No. 24101879
carter@a2xlaw.com
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

**Attorneys in Charge for Plaintiff and the Putative Class Members**